UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States,

        Plaintiff,

v.

Hassan Chokr,

        Defendant.
_____

Case No. 23-20037
District Judge Paul D. Borman
Magistrate Judge Elizabeth A. Stafford

## ORDER OF DETENTION PENDING TRIAL

The United States government charged Hassan Chokr ("Chokr") in a criminal complaint with knowingly providing a false statement during the attempted acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6).

The Court's findings and reasons for holding a detention hearing and detaining Chokr were stated in full on the record at the detention hearing on January 12, 2023, and are incorporated herein. As stated on the record, the Court finds that the government established by a preponderance of the evidence that it is entitled to a detention hearing. Additionally, the Court finds by clear and convincing evidence that there is no condition or combination of conditions which will reasonably assure the safety of the community if Chokr were released.

I.   **BACKGROUND**[1]

During the morning hours of December 2, 2022, Chokr allegedly drove through the parking lot of a Jewish synagogue, which is also used as a preschool, and made racist and antisemitic threats to parents dropping off their children and a security guard on the premises. Chokr yelled "You all are going to die" and "You're going to pay." Oakland County prosecutors later charged Chokr with Ethnic Intimidation in state court in violation of Mich. Comp. Laws § 750.147b for the comments he made at the synagogue. This charge is currently pending. Approximately two hours after leaving the synagogue, Chokr went to a gun store several miles away. (ECF No. 1, PageID.3.) While at the gun store, Chokr looked at and inquired about purchasing several firearms.

Chokr inquired about the following firearms: Glock 19 handgun, AR-15 style assault rifle, Mac-10, and a 12-gauge shotgun. In addition to asking numerous questions about the firearms such as their magazine capacities, whether they are fully automatic, and the ability to load them quickly, he held and inspected each gun. Chokr raised three of them to a shooting position. Chokr held the Glock 19, AR-15 style assault rifle, and 12-gauge shotgun for a combined total of approximately four minutes and then informed the clerk that he wanted to purchase

---

[1] The facts stated in the background section and throughout this order are facts the government alleged during its proffer.

all three firearms.

The store clerk directed Chokr to complete an electronic Alcohol, Tobacco, and Firearms ("ATF") Form 4473 transaction record to purchase the three firearms. Chokr electronically signed and dated the ATF Form 4473 and attested to the truthfulness of the statements provided therein. Question 21b of the ATF Form 4473 asked Chokr whether he is under indictment or information in any court for a felony, or any other crime for which the judge could imprison him for more than one year. Chokr answered that question "No." That was a false statement. In 2020, the State of Michigan charged Chokr in an Information with Felonious Assault with a Dangerous Weapon, and Assaulting, Resisting, and/or Obstructing a police officer. Chokr has a jury trial scheduled for this 2020 case on February 21, 2023. Question 21c of the ATF Form 4473 asked Chokr whether he has been convicted in any court for a felony, or any other crime for which the judge could have imprisoned him for more than a year. Chokr answered "No." That was a false statement. In 2017, the State of Michigan convicted Chokr of Felony Financial Transaction Device in violation of Mich. Comp. Laws § 750.157n.

Chokr's attempted purchase of the three firearms failed after the National Instant Criminal Background Check System produced a negative result. Chokr left the gun store without the firearms. (ECF No. 1, PageID.4.)

On December 15, 2022, the government charged Chokr with knowingly

3

making a false statement in the attempted acquisition of a firearm in violation of 18 U.S.C § 922(a)(6). The statue provides:

> It shall be unlawful ... for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

§ 922(a)(6).

The government must prove the following elements beyond a reasonable doubt to sustain a conviction under § 922(a)(6): (1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer. *United States v. Henry*, 653 F.3d 388, 393 (6th Cir. 2011).

Following Chokr's initial appearance before United States Magistrate Judge Elizabeth A. Stafford, the government moved the Court to hold a detention hearing. The parties dispute whether the government can establish a legal basis to hold a detention hearing and whether the Court must detain Chokr.

## II. LEGAL ANALYSIS

### A. Eligibility for Detention Hearing

Under the Bail Reform Act, the Court may hold a detention hearing if any of the following enumerated provisions apply.

(A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

(B) an offense for which the maximum sentence is life imprisonment or death;

(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

(D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

(E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon . . . .

18 U.S.C. § 3142(f)(1)(A)-(E).

Under § 3142(f)(2), the government or the court may move for a detention hearing if the case involves:

(A) a serious risk that such person will flee; or

> (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The government moves the Court to hold a detention hearing under § 3142(f)(1)(E). The government alleges that this case involves the possession of a firearm, which makes it eligible for a detention hearing.

Whether a charge of attempted acquisition of a firearm in violation of § 922(a)(6) entitles the government to a detention hearing under § 3142(E) appears to be an issue of first impression in this Circuit. The parties have pointed to, and the Court has found, only one circuit court that remotely addressed this issue, in *United States v. Watkins*, 940 F.3d 152 (2d Cir. 2019).

In *Watkins*, the defendant, a previously convicted felon, shot at a vehicle. *Watkins*, 940 F.3d at 155. Days later, law enforcement officers arrested Watkins for the shooting. *Id*. Agents agreed to charge the defendant for felon in possession of ammunition instead of felon in possession of a firearm in exchange for the defendant showing the officers where he hid the firearm that he used in the shooting. *Id*.

The Second Circuit determined whether the government could request a detention hearing under § 3142(f)(1)(E). In analyzing whether the charged conduct fell under the purview of a hearing, the court turned to the language of the detention statute. The Second Circuit found that "the statute's context – both

textual and historical – makes clear that Congress intended the word 'involves' to have a broader and more permissive meaning in § 3142(f)(1)(E) than in the prefatory language in § 3142(f)(1)." *Id.* at 166. "In sum, the phrase 'that involves' in § 3142(f)(1)(E) warrants a conduct-specific inquiry in which the judicial officer may look beyond the elements of the charged offense to consider the actual conduct underlying the arrestee's charged offense." *Id*. at 167. Following its interpretation of the statute, *Watkins* held that the defendant's charge for possession of ammunition "plainly involved the use of a firearm." *Id*.

The government argues that it is entitled to a hearing for two reasons. First, under *Watkins*, the government asserts that the Court should interpret § 3142(f)(1)(E) broadly and look at the underlying conduct in its determination of whether the charged felony involves the possession or use of a firearm. (ECF No. 13, PageID.42) The government argues that if the Court looks at the underlying conduct, it will find that Chokr actually possessed the three firearms contained on the ATF Form 4473 when he momentarily held them in the gun store to inspect them. The government's second argument for a detention hearing is that even if the Court did not look at the underlying conduct, making false statements on the ATF Form 4473 in of itself "involves" the possession of a firearm. (ECF No. 13, PageID.46.)

7

In opposition, Chokr argues that the government is not entitled to a detention hearing because it charged him with attempted acquisition of a firearm and the word "attempted" is not found in § 3142(f)(1)(E). Chokr argues that if Congress wanted § 3142(f)(1)(E) to encompass attempted possession, Congress could have included that language in the statute. (ECF No. 12, PageID.24.) According to Chokr, the Court should not evaluate the underlying conduct. In support of his argument, Chokr relies on *United States v. Gaston*, No. 2:21-CR-36-JD-JPK, 2021 WL 1170201 (N.D. Ind. Mar. 26, 2021).

In *Gaston*, the government charged the defendant for acquiring a firearm in violation of § 922(a)(6). The dispute in *Gaston* was whether the term "acquisition" as used in § 922(a)(6) is the same as "possession" as used in § 3142(f)(1)(E). After looking at the Supreme Court's definition of acquisition in *Huddleston v. US*, 415 U.S. 814 (1974), *Gaston* held that the terms "acquisition" and "possession" are synonymous. *Gaston* found that a detention hearing was proper for an acquisition charge in violation of § 922(a)(6). *Gaston*, at *4. However, as part of its reasoning, the court distinguished "acquisition" from "attempted acquisition" and suggested, without explicitly saying, that a detention hearing may not be proper for a charge for attempted acquisition.

> Thus in sum, "the essential proof of possession" required by the law of this jurisdiction "is some factor indicating that [the defendant] had the authority or the ability to exercise control over the contraband." *Kitchen*, 57 F.3d at

8

> 523. Here, Gaston was charged with making a false statement in connection with the acquisition of a firearm in violation of Section 922(a)(6), not an attempted acquisition.

*Id*.

The Court acknowledges that the government charged Chokr with attempted acquisition. But the inquiry does not end there. Because the defendant in *Gaston* undisputedly possessed the firearm, the court did not analyze whether it should consider the underlying conduct which gave rise to the charge. The Court finds this distinction to be vitally important.

Chokr argues that even if the Court adopted *Watkins* and assessed the underlying conduct, he merely "touched" the firearms prior to his attempted purchase. Chokr's view is that his "touching" does not establish "possession . . . of a firearm" sufficient to trigger a detention hearing under § 3142(f)(1)(E). (ECF No. 12, PageID.30.)

Similar to this case, *Watkins* considered conduct that occurred before the charged offense. In *Watkins*, the defendant fired shots, and days later, officers recovered ammunition in the defendant's possession that was the same ammunition the defendant used. A somewhat similar sequence of events allegedly occurred here. Chokr entered the store, held firearms, and made false statements on the ATF Form 4473 in his attempt to purchase the same firearms he just held. Cases within this district and beyond found *Watkins'* broad interpretation persuasive. *See*

*generally, United States v. Hunter*, No. 22-cr-30177 (E.D. Mich. May 23, 2022) (holding that a defendant's conspiracy to commit murder involved a firearm because during the timeframe of the conspiracy, the government proffered facts that law enforcement officers discovered a rifle at the defendant's feet during a traffic stop); *United States v. Clark*, No. 22-cr-20041 (E.D. Mich. Apr. 5, 2022) (holding that a defendant's charge for felon in possession of ammunition involves the possession of a firearm because he undisputedly possessed a firearm containing the ammunition which he was charged); *United States v. Syed*, No. 22-cr-1395, 2022 WL 6103455 (D.N.M. Oct. 7, 2022) (holding that a defendant's charge for making a false statement on an ATF Form 4473 involved the possession of a gun because he acquired the firearms after the successful transaction).

These cases are persuasive. The Court also finds *Watkins* persuasive and applies it here. The Court now turns to whether Chokr's conduct before providing a false statement on the ATF Form 4473 involved possession or use of a firearm. It is undisputed that Chokr did not use a firearm. However, the parties dispute whether Chokr's handling of the firearms at the gun store prior to his attempted purchase constituted possession.

An individual has actual possession of a firearm if it "is within the immediate power or control of the individual." *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013) (citing *United States v. Murphy*, 107 F.3d 1199, 1207-08

(6th Cir. 1997). "To establish actual possession, the government must prove that the defendant had direct, physical control over the [firearm], and knew that he had control of it." (Sixth Circuit Pattern Criminal Jury Instruction, 2.10A). For example, an individual has actual possession "'where the defendant has physical contact with a firearm – e.g., he **holds it**, holsters it, or keeps it in a place where it is immediately accessible.'" *United States v. Taylor*, 800 F.3d 701, 709 (6th Cir. 2015) (emphasis added) (citing *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007)); *see also United States v. Martin*, No. 22-5172, 2022 WL 17456337, at *3 (6th Cir. Dec. 6, 2022).

After reviewing the gun store's surveillance video, it is clear that Chokr **held** all three firearms for almost four minutes. Not only did Chokr hold the firearms, but he raised the Glock and 12-gauge shotgun in shooting positions and walked around the store with the shotgun.

To rebut the government's evidence that Chokr possessed the guns, Chokr argues that he merely touched the firearms, and that is not possession. In support of this argument, Chokr relies on cases that purportedly held that "touching" a firearm may not constitute possession. Chokr seeks to rely on *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984); *United States v. Wilson*, 922 F.2d 1336 (7th Cir. 1991); *United States v. Williams*, 29 Fed. Appx. 486 (9th Cir. 2002); and *United States v. Teemer*, 394 F.3d 59 (1st Cir. 2005).

In *Beverly*, the government failed to prove that the defendant constructively possessed firearms found in a waste basket the defendant was standing near when officers arrested him. The defendant's fingerprints were found on the gun, but the court found that the government did not present evidence to establish that neither the waste basket nor the gun were within the defendant's direct control. *Beverly*, 750 F.2d at 34. In *Wilson*, the defendant's fingerprint was found on a gun. The court presented multiple scenarios that could explain the fingerprint on the gun and remarked "[m]erely touching would not be possessing it." *Wilson*, 922 F.2d at 1139. The scenarios included the defendant possibly brushing his hand against the gun while making the bed; and possibly grabbing the gun from his child after finding them playing with it. *Id*. The court affirmed the jury's conviction and found that a jury could convict the defendant based on the fingerprint alone. *Id*. In *Williams*, the court found that the district court should have gave a jury instruction to accompany the defendant's theory of defense. The defendant's fingerprints were found on ammunition and he argued that he handed the ammunition to his fiancé prior to the day of his arrest, and that transitory handling did not constitute possession. The court held that the district court should have instructed the jury that the brief handling of the ammunition may not constitute possession. *Williams*, 29 F. Appx. at 2.

Unlike in the above mentioned cases, there is video footage from the gun store revealing that Chokr did not merely touch the firearms, but instead exercised dominion and control over them. Thus, his reliance on these cases to thwart a detention hearing fails.

Additionally, in *Teemer*, police officers effected a traffic stop on a vehicle the defendant was a passenger in. When officers asked the defendant whether his fingerprints would be on the gun, the defendant answered in the affirmative. The defendant stated that when he was at his friend's house a few days prior, he picked up the gun from a seat and moved it so he could watch a football game. *Id*. at 61. The First Circuit affirmed the district court's use of a jury instruction defining possession as a defendant "exercising authority, dominion, or control." *Id*. at 65. "Assuming that Teemer moved the gun to sit down and did nothing else (*i.e.*, had never carried it into the house or ridden with it deliberately in reach), we think that the jury was still entitled – but not required – to conclude that he had broken the law." *Id*.

*Teemer* does not undermine the government's evidence and proffer that Choker possessed the firearms. First, *Teemer* held that whether mere touching of a firearm rises to possession is a question suited for a jury. Second, *Teemer's* distinction between moving a gun out of the way to have a seat and "[carrying] it

13

into the house" undermines Chokr's defense as Chokr did not just move the firearms but instead held them and had control over them in the store.

The government alleges that Chokr did not merely touch firearms in the store. The government alleges, and video evidence provided to the Court supports a finding, that Chokr unequivocally placed both hands on each gun, aimed at least two of them at invisible targets, and walked around the store with some of the guns in a tactical manner. Though the guns could not be fired without ammunition, and Chokr had not purchased them, the government argues he exercised dominion and control over them for the brief time he held them. These are convincing arguments.

After evaluating Chokr's underlying conduct in light of *Watkins*, the Court finds that the government established by a preponderance of the evidence[2] that Chokr's charged felony involves the possession of a firearm.[3] The Court need not answer whether the false statements alone involve the possession of a firearm.

---

[2] The government asserts that it is entitled to a detention hearing if it proves by a preponderance of the evidence that the offense involves a firearm. (ECF No. 13, PageID.42.) Chokr did not dispute this evidentiary standard. Courts within this district have applied a preponderance of the evidence standard when assessing the government's entitlement to a detention hearing. *See United States v. Hunter*, No. 22-cr-30177 (E.D. Mich. May 23, 2022); *United States v. Clark*, No. 22-cr-20041 (E.D. Mich. Apr. 5, 2022).

[3] The Court finds that Choker's conduct involves the possession of a firearm for purposes of determining whether the government is entitled to a detention hearing. The Court is not deciding whether the government has satisfied its burden to prove beyond a reasonable doubt that Choker knowingly possessed the firearms or lied in an attempt to acquire firearms. Subsequent to the detention hearing in this matter, a grand jury indicted Chokr for felon in possession of a firearm and making a false statement during the attempted acquisition of a firearm based on the same alleged facts. *United States v. Chokr*, 2:23-cr-20037-PDB-EAS, Dkt. No. 18 (E.D. Mich. Jan. 18, 2023)

### B. Application of the Bail Reform Act Requires Chokr's Detention

After finding that the government was entitled to a detention hearing, the Court ordered Chokr's detention.

The report of the Pre-trial Services Department recommended that the Court detain Chokr because it believes there are no conditions or combination of conditions that can be imposed to mitigate the risk of danger to the community. Pre-Trial Services claims Choker poses a risk of danger for the following reasons: nature of instant offense; prior arrests and convictions; mental health history; pretrial compliance; violent behavior history; prior charge involving violence; history of weapons use/possession; and safety concerns for the community or a specific individual. The Court adopts the assessments of the Pre-Trial Services report regarding risk of danger. The Court agrees that no reasonable bond conditions exist, particularly given the proffered evidence of Chokr allegedly making anti-semantic threats to individuals based on their race at a synagogue, and then attempting to buy three firearms approximately two hours later.

### i. Nature and Circumstances of the Offense Charged – 18 U.S.C. § 3142(g)(1)

The government alleged that Chokr told individuals at the synagogue that they were going to die and the individuals perceived those statements as threats against their lives. The Court is significantly concerned that multiple members of

15

the community felt threatened and feared imminent harm, so much so they called the police for assistance. Two hours after making these allegedly threatening statements, Chokr went to a gun store to purchase high-powered guns. While in the gun store attempting to purchase the firearms, the sales clerk allegedly heard Chokr say that he will use the weapons for "God's wrath." (Dearborn Police Department Report, ECF No. 13-7, PageID.89.) It is also alleged that after the sales clerk denied Chokr's purchase of the firearms, Chokr became irate and began to yell that he would "tunnel through the drywall and get his guns." *Id*. Additionally, Chokr posted a picture of the denial slip from the gun store on social media with the words "Time to bust out the drywall. Ouzzie time." (ECF No. 13-7, PageID.93.) Following his post of the denial slip, Chokr posted on social media "You won't take me Alive mother fuckers." (*Id*., PageID.92.) Though these are allegations, the Court is concerned with both what Chokr allegedly intended to use the guns for, and his persistence to get guns even after being denied.

Chokr claims the statements he made at the synagogue were not threats and were protected under the First Amendment. The alleged threats were sufficiently serious that Chokr faces criminal charges for them. The Court declines to opine on the strength of his defenses. However, the Court notes that this offense actually involved guns, which is an express factor for the Court to consider in determining whether reasonable bond conditions exist. The alleged threats combined with the

16

bold and methodical attempt to purchase guns pose a real and credible threat to the safety of the community.

### ii. Weight of the Evidence – 18 U.S.C. § 3142(g)(2)

The undersigned notes that this factor concerns "the weight of the evidence of dangerousness." *United States v.* Stone, 608 F.3d 939, 948 (6th Cir. 2010). Chokr's successful acquisition of firearms could cause a great loss of life. The weight of the evidence of dangerousness is high given his alleged bold attempt to illegally purchase firearms two hours after threatening multiple members of the public. Ample evidence also supports the charges against Chokr given the multiple videos documenting his actions and the attempted purchase documents.

### iii. Personal History and Characteristics – 18 U.S.C. § 3142(g)(3)

A lifelong resident of the Eastern District of Michigan, Chokr has a supportive family and does not have a lengthy record of criminal activity or violent conduct. However, the Court is concerned about the erratic behavior Chokr has demonstrated since 2020. The Court reviewed a report which contained an alleged statement from a relative of Chokr that Chokr is unable to control his rage. During his pre-trial services interview, Chokr discussed mental health diagnoses in 2020. Chokr admitted that he did not take medications as prescribed because he did not like how they made him feel. To Chokr's credit, he participated in counseling and has indicated his willingness to attend additional mental health treatment in the

future and to take medications as prescribed.[4]

In 2021, Chokr hit and abused his pet, according to a concerned citizen. Chokr was convicted of Attempt-Misdemeanor Animals-Abandoning/Cruelty to One Animal. When Chokr made the alleged threats and went to the gun store here, he was on bond for a pending criminal charge of Assaulting, Resisting, and/or Obstructing a Police Officer. Chokr disregarded the bond instructions that court set for his release and the court revoked his bond. Chokr has not demonstrated an ability to comply with court orders and the Court lacks faith that Chokr would comply with orders of release and conditions such as electronic monitoring and voluntary treatment.

### iv. Nature and Seriousness of Risk of Danger to Others and the Community – 18 U.S.C. § 3142(g)(4)

Chokr's release would present a serious risk of danger to others particularly given alternate methods of firearms acquisition that do not involve trips to lawfully operated gun stores. Each of the detention factors weigh in favor of detention. *Id.* at 954. His threats on individuals' lives, taken together with his attempt to purchase high-powered firearms approximately two hours after making the threats,

---

[4] The Court notes that neither party raised any issue regarding competency. The Court observed Chokr's responsiveness and ability to answer questions posed by the undersigned. He appeared to be an active participant in court and to assist in his attorneys' defense. Chokr addressed the Court and utilized clear and direct language in a controlled manner. The Court did not find a basis to question Chokr's competency.

and his prior disregard of another court's bond conditions and conviction for harming a pet and his failure to take prescribed medications for a diagnosed disorder, compel the Court to find that no conditions or combination of conditions exist to reasonably assure the safety of any other person or the community.[5]

Dated: January 24, 2023                    s/**Jonathan J.C. Grey**
                                                                Jonathan J.C. Grey
                                                                United States Magistrate Judge

---

[5] Chokr retains the presumption of innocence as to his pending charges and nothing in this order modifies or limits that presumption. 18 U.S.C. § 3142(j).

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2023.

<u>s/ **J. Owens**</u>
**Julie Owens**