UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                                   Case No. 23-cr-20037

v.                                         Hon. Jonathan J.C. Grey

Hassan Yehia Chokr,

       Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

*"You are going to pay…f\*ck Israel!"*
*"Do you support the state of Israel? How dare you. Shame on you."*
*"F\*ck Jews!"*
—Hassan Yehia Chokr, December 2, 2022

      In December 2022, Hassan Yehia Chokr drove through the parking lot of a local synagogue, confronting and terrorizing Jewish parents with this hateful, anti-Semitic tirade as they walked their children into preschool. Less than two hours later, Chokr—a convicted felon—drove to a gun store to try to buy multiple firearms, indicating that he's "going to even the score" and use the firearms for "God's wrath." While in the gun store, Chokr illegally possessed multiple firearms before lying about being a convicted felon when filling out the required background check form.

1

The nature and circumstances of the defendant's crime are extremely serious and disturbing. Accordingly, for the reasons discussed below, the Court should sentence the defendant to the midpoint of the applicable guideline range.

**I.     PROCEDURAL BACKGROUND**

On December 15, 2022, the defendant was charged in a complaint with making a false statement during the attempted acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6). (ECF No. 1, PageID.1). On January 18, 2023, a grand jury subsequently returned a two-count indictment charging Chokr with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), in addition to the false statement charge. (ECF No. 18, PageID.104). Over the 27 months that followed, the defendant was subject to competency proceedings resulting in the Court finding him not competent to stand trial (ECF No. 39, PageID.233), but ultimately finding him once again competent following a period of restoration treatment (ECF No. 89, PageID.596).

On May 27, 2025, after being found competent to stand trial, the defendant pleaded guilty to Count One of the indictment, felon in possession of a firearm, pursuant to a plea agreement. (ECF No. 84, PageID.577). Sentencing is currently set for September 24, 2025.

## II.  FACTUAL BACKGROUND

On December 2, 2022, around 9:00 a.m., Chokr slowly drove through the parking lot of Temple Beth El in Bloomfield Hills, Michigan, yelling ominous, fear-inducing anti-Semitic profanities at parents as they dropped off their young children at the preschool there. PSR ¶¶ 14–16. As one mother walked her daughters through the parking lot, Chokr yelled, "Do you support Israel? How dare you . . . You are going to pay . . . F*ck Israel." PSR ¶ 15. Another parent reported that Chokr repeatedly yelled, "F*ck Israel" and "F*ck Jews" as he held his middle finger out the window. *Id.* Chokr also kept calling the African American security guards "ni**er" and told them that "the Keff of Allah is coming for all you motherf*ckers." PSR ¶ 16.

Less than two hours later, Chokr drove to a gun store in Dearborn. PSR ¶ 17. There, Chokr handled six different firearms, holding each firearm in his hands, and at times pointing and aiming the firearm with his finger on the trigger. *Id.*; *see* Figures 1–6 below.


*Fig. 1: Chokr pointing a semi-automatic handgun.*


*Fig. 2: Chokr handling an AR15-style assault rifle.*


*Fig.3: Chokr handling a Mac-10 machinegun.*


*Fig. 4: Chokr pointing a 12-gauge shotgun.*

4




*Fig. 5: Chokr handling a pump-action shotgun*     *Fig. 6: Chokr pointing AK47-style assault rifle.*

Chokr ultimately decided to purchase the semi-automatic handgun, AR-15 assault rifle, and pump-action shotgun depicted above in Figures 1, 2, and 5. PSR ¶ 18. In completing the required ATF Form 4473, Chokr untruthfully answered "No" to several questions that would determine his eligibility to receive or possess a firearm. Specifically, he lied by indicating that he was not under information in any court for a felony, that he had never been convicted of a felony, and that he had never been committed to a mental institution. *See* Ex. A, ATF Form 4473. In truth, at the time, Chokr was pending trial for assaulting, resisting, and obstructing a police officer in Wayne County Third Circuit Court. *See* Ex. B, 3rd Cir. Reg. of Actions. He also had been convicted of a felony offense in September 2017. PSR ¶ 45. Finally, Chokr previously was committed to a mental institution under a mental

health order issued by the Wayne County Probate Court. PSR ¶ 69. While waiting for the results of the background check in the gun store, Chokr stated, "It ain't a fair fight out here. I'm going to even the score. I'm going even the playing field real soon brothers, real soon." PSR ¶ 19. Chokr also said he would use the guns for "God's wrath." *Id.* Fortunately, Chokr was denied the purchase after he failed the background check. *Id.* This enraged Chokr who threatened to break into the store and "get his guns."

> checked Chork's ID and completed/signed background check form. Chokr failed the background check and was not sold any firearms. Chokr became irate yelling that he would "tunnel through the drywall and get his guns".

*Fig. 7: Dearborn Police Report*

Chokr also posted a video on his Instagram story of the denial slip with the words, "Time to bust out the drywall. Ouzzie time[.]" along with the statement, "You won't take me Alive mother f*ckers."




*Fig. 8: Chokr Instagram Story*     *Fig. 9: Chokr Instagram Story*

6

### III. PLEA AGREEMENT AND PRESENTENCE REPORT

The plea agreement did not include joint recommendations by the parties as to the defendant's guideline calculations. (ECF No. 87, PageID.584). The Probation Department found that the following guideline provisions apply to the offense of conviction:

- USSG § 2K2.1(a)(6): base offense level–prohibited person, 14 (PSR ¶ 25)
- USSG § 2K2.1(b)(1)(A): involved 3 firearms, +2 (PSR ¶ 26)
- USSG § 2K2.1(b)(6)(B): in connection with another fel. offense, +4 (PSR ¶ 27).

Based on these guideline provisions, the defendant's criminal history category of III, and the defendant's acceptance of responsibility, the Probation Department calculated Chokr's guideline range to be 30 to 37 months. PSR ¶ 86.

The defendant objects to the 4-point enhancement based on his possession of any firearm in connection with another felony offense, that is, making a false statement during the attempted acquisition of a firearm. *See* Addendum to the Presentence Report, p. A-2. Chokr argues that application of this specific offense characteristic is inappropriate since he has not been convicted of the false statement offense and that the government would be dismissing Count Two as part of the plea agreement. *Id.* Chokr's arguments are inapposite since relevant conduct under the Sentencing Guidelines includes uncharged conduct and criminal acts that do not result in conviction. Relevant conduct which is considered in determining

7

the base offense level and specific offense characteristics of the offense of conviction includes "all acts and omissions committed . . . by the defendant." USSG § 1B1.3(a)(1)(A). As disputed here, for USSG § 2K2.1(b)(6)(B) to apply, the government must establish the nexus between any firearm and another felony by a preponderance of the evidence. *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007). There is no requirement that the independent felony—here, making a false statement in the attempted acquisition of a firearm—be charged or that the defendant be convicted of it. *See* USSG § 2K2.1, comment. (n.14) ("'Another felony offense', for purposes of subsection (b)(6)(B), means any federal, state, or local offense . . . **regardless of whether a criminal charge was brought, or a conviction obtained**" (emphasis added); *see also Burns*, 498 F.3d at 580 n. 2 ("The independent felony need not be charged."). Accordingly, Chokr's argument that a conviction on Count Two—the independent felony—is required to apply the 4-point enhancement, fails. Here, the defendant possessed several different firearms so he could decide which ones he would attempt to illicitly purchase by lying on the ATF Form 4473. Chokr's possession of the firearms therefore "facilitated, or had the potential of facilitating" the false statement felony offense, making USSG § 2K2.1(b)(6)(B) clearly applicable.

8

## IV. SENTENCING RECOMMENDATION

When fashioning an appropriate sentence for a defendant, a court must first consider the applicable guideline range under 18 U.S.C. § 3553(a)(4). Although the sentencing guidelines are advisory, they are the "starting point and the initial benchmark" for federal sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Once a court has determined the appropriate sentencing range, it must then consider that range in light of the other relevant § 3553(a) factors.

In order to arrive at an appropriate sentence, the Court must consider several factors, including: (1) the nature and circumstances of the offense; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the history and characteristics of the defendant; and (4) adequate deterrence of criminal conduct and the protection of the public. 18 U.S.C. § 3553(a). Section 3553(a) then requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply" with these purposes. *Id*.

Consideration of the § 3553(a) factors here strongly supports that a sentence at the midpoint of the applicable guideline range would be sufficient to reflect the seriousness of the defendant's conduct, and to promote respect for the law, provide just punishment, protect the public from the defendant, and afford adequate deterrence of criminal conduct.

### A. The nature and circumstances of the offense and the history and characteristics of the defendant – 18 U.S.C. § 3553(a)(1)

Chokr's crime is unquestionably serious and warrants a within-Guidelines sentence. The Guidelines are specifically tailored to account for the seriousness of the offense, the defendant's criminal history, and Congress's policy judgment that felons with firearms, like the defendant, present heightened risks. Underscoring the seriousness of Chokr's offense is that he was not only prohibited from possessing firearms because he was a convicted felon, but he was also barred because he was under indictment and had a prior mental health adjudication. The defendant's own actions, as demonstrated by his criminal history, his terror-inducing behavior at Temple Beth El, and his statements suggesting how he intended to use the firearms underscores the need for a significant sentence in this case.

Chokr has one prior felony conviction for fraudulently using someone's credit card to purchase almost $5,000 of electronic equipment at Best Buy. PSR ¶ 45. In that case, when questioned by police, Chokr's first instinct was to lie by saying that the credit card he used belonged to his girlfriend. *Id.* But Chokr's disregard for law enforcement and the legal system in general is no surprise. He has a history of driving-related convictions including reckless driving and driving without a license or while it was suspended. PSR ¶¶ 36–39, 41. Chokr also has a conviction for resisting and obstructing an officer. PSR ¶ 42. He has a consistent history of disregarding orders of the court resulting in the issuance of countless

10

bench warrants and show cause orders while on probation. PSR ¶¶ 36, 40, 42, 43, 44, 46. When he committed this offense, he was on bond in Wayne County on a pending assaulting, resisting, and/or obstructing a police officer case. *See* Ex. B, 3rd Cir. Reg. of Actions.

Perhaps a prelude to Chokr's disturbing behavior in this case is his conduct that resulted in his 2020 conviction for animal cruelty. PSR ¶ 46. There, he posted Instagram videos of himself abusing a puppy by having it lick a chewed-up wire that was covered in hot sauce. *Id.* When officers encountered Chokr about this incident, he threatened to "beat the f*ck" out of them. *Id.*

In this case, Chokr tried to purchase multiple guns after confronting Jewish parents and their young children in a synagogue parking lot. He verbally assaulted them with anti-Semitic profanities for their support of Israel and threatened that they would "pay." PSR ¶ 15. Following this tirade, Chokr drove to a gun store and possessed multiple firearms including a semi-automatic pistol, two different assault rifles, two different shotguns, and a machinegun. Chokr held each of these firearms as if he were going to shoot them, at times pointing and aiming the firearms and putting his finger on the trigger. *See Figures 1–6,* above. While Chokr was at the store waiting for the background check to clear, he explained, "It ain't a fair fight out here. I'm going to even the score. I'm going even the playing field real soon brothers, real soon." PSR ¶ 19. Chokr also said he would use the guns for "God's

11

wrath." *Id.* Following the denial of his purchase, Chokr indicated that he would persist in trying to acquire guns by posting on his Instagram story that it was "Time to bust out the drywall. Ouzzie time." *See Figure 8,* above. The federal background check system thankfully prevented Chokr from walking out of that gun store with the three high-powered firearms he attempted to purchase. Based on his statements, what he intended to do with the firearms posed a true and grave threat to the community.

The nature and circumstances of Chokr's offense, his erratic and disturbing history, and his repeated disregard for legal authority justifies the term of imprisonment that the government seeks here.

> **B.  The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense – 18 U.S.C. § 3553(a)(2)(A)**

A convicted felon's possession of a firearm in and of itself presents a grave risk to public safety and directly implicates the need to protect the community. But a convicted felon, like Chokr, who is motivated by anti-Semitic rage to acquire and potentially use firearms against others, is particularly troublesome given the divisiveness of today's political and social climate and the violence that has resulted. While the defendant was not able to acquire the firearms he wanted to carry out the acts of violence about which he spoke, his unlawful possession of the firearms for the purpose of purchasing them is deserving of a significant sentence.

When firearms fall into the hands of convicted felons, Congress's gun control measures are thwarted. 18 U.S.C. § 922(g)(1) is a critical gun control measure aimed at preventing convicted felons from having a firearm because of the danger they pose to the community when they do. In enacting this statute, "Congress sought to rule broadly—to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" *Scarborough v. United States*, 431 U.S. 563, 572 (1977) (quoting 114 Cong. Rec. 14773 (1968)). Given his prior felony conviction and what the defendant expressed he intended to do with the firearms he was trying to purchase, Chokr is exactly the sort of person Congress intended to prohibit from possessing a firearm.

A sentence in this case needs to deliver the appropriate punishment for felons like Chokr who illegally possess firearms. Only a Guidelines sentence will send the message that the law prohibiting felons should be respected.

### C. The need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public – 18 U.S.C. §§ 3553(a)(2)(B), (C)

A Guidelines sentence is warranted here to serve the dual purposes of deterrence and protecting the public. Congress has recognized that felons who possess firearms pose and especially acute risk because their prior criminal behavior demonstrates both a willingness to violate the law and an increased

13

likelihood that they will use firearms in a dangerous manner. A within-Guidelines sentence sends a clear message of deterrence—both to Chokr and to other felons—that illegal possession of firearms by felons will be met with serious consequences. Equally important, such a sentence ensures protection of the public for the time that the defendant is incarcerated.

## V. CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court impose a sentence of imprisonment at the midpoint of the applicable Guidelines range.

                                      Respectfully Submitted,

                                      JEROME F. GORGON, JR.
                                      United States Attorney

                                      *s/ Frances Lee Carlson*
                                      Frances Lee Carlson
                                      Assistant United States Attorney
                                      211 West Fort Street, Suite 2001
                                      Detroit, Michigan 48226-3211
                                      (313) 226-9696
                                      frances.carlson@usdoj.gov
                                      P62624

Dated: September 17, 2025

## CERTIFICATE OF SERVICE

I certify that on Wednesday, September 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

        *s/ Frances Lee Carlson*
        Frances Lee Carlson
        Assistant United States Attorney